J-S01001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.S.P., a Minor, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.P., Father, | : | No. 1805 EDA 2015 |

Appeal from the Order entered May 12, 2015
in the Court of Common Pleas of Philadelphia County,
Family Court Division, No(s): 51-FN-002952-2012;
CP-51-AP-0000043-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: Q.C.P., a Minor, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.P., Father, | : | No. 1806 EDA 2015 |

Appeal from the Order entered May 12, 2015
in the Court of Common Pleas of Philadelphia County,
Family Court Division, No(s): 51-FN-002952-2012;
CP-51-AP-0000044-2015

BEFORE: GANTMAN, P.J., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED JANUARY 28, 2016**

M.P. ("Father") appeals from the Order granting the Petition filed by the Philadelphia Department of Human Services ("DHS") involuntarily terminating his parental rights to his minor female children, Q.C.P. and M.S.P. (collectively, "Children"), twins born in December 2008, pursuant to Section 2511(a)(1), (2), (5), (8) and (b), and changing Children's

permanency goal to adoption.[1]  We affirm.

The trial court aptly summarized the factual and procedural history of this case, which we adopt for the purpose of this appeal.  *See* Trial Court Opinion, 8/13/15, at 1-6.

Relevantly, Father was convicted of Involuntary Deviate Sexual Intercourse in 1980 and was in prison until December 2003.  Upon his release, Father was required to register as a Megan's Law Offender for 10 years.  Father spent 5 years in jail, beginning in September 2009, as a result of his failure to register as a Megan's Law Offender.  Consequently, Father was in prison for a majority of Children's lives.

Children were adjudicated dependent on November 26, 2012, after Mother texted a neighbor to indicate that she had relapsed from drug treatment, and instructed the neighbor to contact DHS.[2]  DHS obtained an Order of Protective Custody, and thereafter, Children remained under the care of DHS.

Children were placed in a pre-adoptive home in September 2014.  On January 20, 2015, DHS filed an Involuntary Termination of Parental Rights ("ITPR") Petition against Father under 23 Pa.C.S.A. § 2511(a)(1), (2), (5),

---

[1] The Order terminated the parental rights of both Father and C.D. ("Mother").  Trial Court Opinion, 8/13/15, at 1 n.1.  Mother does not appeal from the Order.

[2] Previously, in September 2011, Mother called in a General Protective Services report on herself after an all-day drug binge during which she left Children unsupervised and without food or water.  Mother subsequently completed both inpatient and outpatient drug treatment programs.

(8) and (b). The Petition also changed Children's permanency goal to adoption. The trial court conducted hearings on February 2, 2015, and April 28, 2015. On May 12, 2015, the trial court terminated Father's parental rights under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b), and changed Children's permanency goal to adoption. Father filed a timely Notice of Appeal and a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Father raises the following questions for our review:

I. Did the [t]rial [c]ourt err in terminating [Father's] parental rights under Pa.C.S.[A. §] 2511?

II. Did the [t]rial [c]ourt err in finding that termination of parental rights best served [C]hildren's developmental, physical and emotional needs under [subsection] (b)?

III. Did the [t]rial [c]ourt err in changing [C]hildren's goal to adoption?

Father's Brief at vi.

We review an appeal from the termination of parental rights in accordance with the following standard:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

- 3 -

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner "to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If the competent evidence supports the trial court's findings, "we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

Satisfaction of any one subsection of Section 2511(a), along with consideration of Section 2511(b), is sufficient for the involuntary termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we will review the trial court's decision to terminate Father's parental rights based upon Section 2511(a)(1) and (b), which state the following:

**§ 2511. Grounds for involuntary termination.**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

Parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. … [P]arental duty is best understood in relation to the needs of a child. … [T]his court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires a continuing interest in the child and a genuine effort to maintain communication and association with the child.

*In the Interest of J.T.*, 983 A.2d 771, 776-77 (Pa. Super. 2009) (internal quotations and citations omitted).

In regard to incarceration and the preservation of parental rights, we have stated the following:

> [I]ncarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; however, an incarcerated parent's responsibilities are not tolled during [her] incarceration. … [P]arental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of [her] ability, even in difficult circumstances.

*In the Interest of C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (citations omitted); *see also In re S.P.*, 47 A.3d 817, 828 (Pa. 2012). Further,

> [a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

In his first claim, Father asserts that the trial court erred in granting the ITPR Petition because DHS did not satisfy, by clear and convincing evidence, that his parental rights should be terminated under Section 2511(a). Father's Brief at 6. As to the requirements of subsection (a)(1), Father argues that the trial court relied almost entirely on his incarceration as evidence of a settled intent to relinquish parental claim and failure to perform parental duties. *Id.* at 7-8. Father claims that he has made efforts to be reunified with Children by sending cards, calling Children while in placement, and communicating with DHS workers about Children. *Id.* at

8-9. Father also asserts that he has participated in the Family Service Plans by enrolling in a parenting class. *Id.* at 8.

The trial court appropriately applied Section 2511(a)(1) to this case, and we adopt its Opinion as to that subsection for the purposes of this appeal. *See* Trial Court Opinion, 8/13/15, at 7-9; *see also In re B., N.M.*, 856 A.2d 847, 858 (Pa. Super. 2004) (concluding that father showed a settled purpose of relinquishing his parental rights where he sat idle for most of child's life while mother performed all parental duties, and that father's wish to not have his "parental rights terminated was insufficient to protect those rights without acting affirmatively to foster a parental relationship with [c]hild during his incarceration.").

In his second claim, Father contends that the trial court erred in determining that termination served Children's best interests under Section 2511(b). Father's Brief at 13. Father argues that the social worker's testimony regarding Children's relationship with Father did not rise to the level of clear and convincing evidence. *Id.* at 13-14. Father claims that "it is hard to believe" that Children are completely bonded with the foster mother after living with her for less than a year. *Id.* at 14. Further, Father asserts that adoption in not in Children's best interests because he is now ready, willing, and able to care for them. *Id.*

The trial court set forth the relevant law regarding Section 2511(b), and determined that it was in Children's best interest to terminate Father's

parental rights. *See* Trial Court Opinion, 8/13/15, at 12-13; *see also In re T.S.M.*, 71 A.3d 251, 268 (Pa. 2013) (stating that "courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents."). Upon our review, the trial court appropriately applied Section 2511(b) to this case, and we adopt its Opinion for the purposes of this appeal. *See* Trial Court Opinion, 8/13/15, at 12-13.

In his third claim, Father asserts that the trial court erred in changing Children's permanency goal to adoption. Father's Brief at 14. Father argues that if the trial court erred in terminating his parental rights, it also erred in determining that DHS should not continue to provide Father with services. *Id.* at 15.

> When we review a trial court's order to change the placement goal for a dependent child to adoption, our standard is abuse of discretion. In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witnesses and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm even if the record could also support the opposite result.

*In re N.C.*, 909 A.2d 818, 822-23 (Pa. Super. 2006) (citations and quotation marks omitted).

> In a change of goal proceeding, the trial court must focus on the child and determine the goal in the child's best interest. . . . As a practical and legal matter, an order by the juvenile court changing the child's placement goal from reunification to adoption ends any dispute that may exist between [DHS] and the parent as to the adequacy of [DHS's] services aimed at reuniting the parent with [his] children and, of course, at to whether [DHS] had selected the most appropriate goal for this family. By allowing [DHS] to change its goal to adoption, the trial court has decided that [DHS] has provided adequate services to the parent but that [he] is nonetheless incapable of caring for the child and that, therefore, adoption is now the favored disposition. In other words, the trial court order is the decision that allows [DHS] to give up on the parent.

*In the Interest of A.L.D.*, 797 A.2d 326, 339 (Pa. Super. 1996) (citations omitted). "Matters of custody and placement for a dependent child must be decided under the standard of the *child's* best interests, not those of his or her parents." *In re N.C.*, 909 A.2d at 823 (emphasis in original).

Upon our review, we conclude that there is adequate support in the record for the trial court's decision to change Children's permanency goal to adoption. Having already determined that it is in Children's best interests to terminate Father's parental rights, we must also agree that it is in Children's best interests to change their permanency goal to adoption.

Based upon the foregoing, the trial court did not err in granting the ITPR Petition and changing Children's permanency goal to adoption.

Order affirmed.

- 9 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/2016

THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA, PHILADELPHIA COUNTY
IN THE COURT OF COMMON PLEAS

|  |  |  |
|---|---|---|
|  | : | FAMILY COURT DIVISION |
|  | : | JUVENILE BRANCH-DEPENDENCY |
|  | : |  |
| IN RE: M.P., a Minor | : | CP-51-AP-0000043-2015 |
|  | : | ~~CP-51-DP-0001998-2012~~ |
|  | : |  |
| IN RE: Q.C.P., a Minor | : | CP-51-AP-0000044-2015 |
|  | : | ~~CP-51-DP-0001996-3012~~ |
|  | : |  |
|  | : | Superior Court Docket-Consolidated |
|  | : | 1805 EDA 2015 and 1806 EDA 2015 |
|  | : |  |
| APPEAL OF: M.P., Father | : |  |

## OPINION

### INTRODUCTION

M.P. ("Father") appeals from the Decree and Order entered by this Court on May 12, 2015, granting the Petition filed by the Philadelphia Department of Human Services ('DHS") involuntarily terminating his parental rights to his minor female children, Q.C.P. and M.S.P.,("Children") and changing the Children's permanency goal to Adoption. After a full hearing on the merits, this Court found that clear and convincing evidence was presented to terminate the parental rights of Father.[1] As discussed in greater detail below, the Trial Court terminated Father's parental rights because Father, during over two years that the Children were in the custody of DHS, did not complete his Family Service Plan, ("FSP") objectives, made little effort to be involved with his Children while

---

[1] Mother's parental rights were also terminated. No appeal was filed.

incarcerated nor did he maintain a relationship with the Children during the brief time period when he was not in custody. Furthermore, the Children, who were six years old at the time of the hearing, were doing well in the pre-adoptive home of their foster mother.

## TERMINATION HEARING

On January 20, 2015, DHS filed Petitions to Terminate Father's Parental Rights and Change their Permanency Goal to Adoption. On February 3, 2015, and April 28, 2015, this Court heard testimony pursuant to the Petitions filed by DHS.

The Assistant City Solicitor first presented testimony from DHS case worker, Jennifer Klepesky who testified credibly. Ms. Klepesky, who had been assigned to the case for approximately four (4) years, testified that the family first became known to DHS in September 2011, after C.D. ("Mother"), called in a General Protective Services ("GPS") report on herself. (N.T., 2/3/2015, pp.3-5). Mother, went on an all-day drug binge, left the Children, then about two (2) years old, home alone unsupervised. (N.T., 2/3/2015, pp. 4-5). Mother did not leave any food or water for the Children aside from some candy that she left on the windowsill. (N.T. 2/3/2015, p.5). Mother then entered an inpatient drug treatment program with the Children. (N.T. 2/3/2015, p.6). Upon completion of this program, Mother went to an outpatient program at which time she was able to return home with her Children with in-home protective services. (N.T. 2/3/2015, p.6). On November 3, 2012, the Children were in the care of a neighbor who was contacted by Mother via text that she had relapsed and instructing the neighbor to contact DHS. (N.T. 2/3/2015, p.6). An Order of Protective Custody ("OPC") was obtained and the Children were placed under the care of DHS where they have remained ever since.

2

(N.T. 2/3/2015, p.7). Around the time that DHS obtained the OPC, Father was incarcerated. (N.T. 2/3/2015, p.7).

Father testified that he had been convicted of Involuntary Deviate Sexual Intercourse ("IDSI") in 1980 and spent 24 years in prison. (N.T. 4/28/2015, p.6). Father was released from custody in December 2003 on the condition that he register for 10 years as a Megan's Law Offender. (N.T. 4/28/2015, p.6). In September 2009, the Father was incarcerated for five (5) years for Failure to Register as a Megan's Law Offender. (N.T. 2/3/2015, p.7; N.T. 4/28/2015, p. 6). Consequently, nearly the entire time that the Children were in care, Father was incarcerated. (N.T. 4/28/2015, p.7).

The Children were adjudicated Dependent on November 26, 2012. A Family Service Plan was held shortly thereafter at which time objectives were established for both Mother and Father. (N.T. 2/3/2015, pp.8, 12). Mother was to maintain suitable housing with operable utilities, remain drug free, continue with outpatient treatment, participate in mental health treatment, visitation parenting and to sign all necessary releases for DHS. (N.T. 2/3/2015, p.8).

DHS introduced reports from the Clinical Evaluation Unit ("CEU"), which reflected that Mother consistently tested positive for benzos and cocaine and did not successfully complete a drug treatment program. (N.T. 2/3/2015, pp.8-10). Additionally, there was no evidence that Mother ever received any mental health treatment. (N.T. 2/3/2015, pp.11, 23). Ms. Klepesky also testified that Mother's visitation was inconsistent. (N.T. 2/3/2015, pp.11-12, 25).

3

Ms. Klepesky also testified that the sole objective for Father, since the beginning of the case, was to make his whereabouts known to DHS. (N.T. 2/3/2015, p.12). Ms. Klepesky stated further that Father failed to reach out to DHS for most of the duration of the case, until a couple of months before the Hearing on February 3, 2015. (N.T. 2/3/2015, p.13). Ms. Klepesky testified further that she did not receive any letters from Father, nor phone calls from the prison social worker, during the entire time that the Children were in DHS care. (N.T. 2/3/2015, p.13).

The Assistant City Solicitor also presented testimony from a Ms. Williford, a former Children's Choice agency case worker who testified credibly. Ms. Williford testified that she was the case worker when the Children came into care in November 2012 and remained their case worker until May 2014. (N.T. 4/28/2015, p.20). Ms. Williford testified that she located the Father's place of incarceration and made outreach to him. (N.T. 4/28/2015, p.21). Father testified the he became aware that the Children were in DHS care in September or October 2013 while incarcerated at SCI Huntingdon. (N.T. 4/28/2015, p.5). Father acknowledged receiving correspondence from Ms. Williford. (N.T. 4/28/2015, p.7). Ms. Williford also testified that after Father was released from prison, additional FSP objectives were established in November 2013. Specifically, Father was to meet regularly with the agency social worker, follow through with the Individual Service Plan ("ISP"), locate and occupy suitable space, heat and other operable utilities, maintain recovery for drug and alcohol abuse, comply with all treatment recommendations, sign all necessary authorizations and to maintain a relationship with the Children through visitation. (N.T. 2/3/2015, pp.17-18).

Ms. Klepesky informed the Court that Appellant had been incarcerated for the greater part of the lives of the Children and that since Appellant's release from prison, the only contact he had with the Children was one (1) phone call during a supervised visit with Mother. (N.T. 2/3/2015, p.16). At the time of the Hearing, Appellant did not have suitable housing, was not receiving drug and alcohol treatment, had not had any contact with the agency and had not visited the Children. (N.T. 2/3/2015, pp.18-19).

Finally, the Assistant City Solicitor presented testimony from Ms. Lesha Lewis, a CUA worker from Wordsworth who testified credibly. Ms. Lewis testified that she first received the case in January 2015, (N.T. 4/28/2015, p.31). At that time, the Children were in a pre-adoptive home where had been placed in September 2014. The Children were residing in this pre-adoptive home at the time of the Hearing. (N.T. 4/28/2015, pp.31-32). Ms. Lewis testified that she observed the girls with their current caregiver 18 times; 4 times in the pre-adoptive home and the rest when the foster parent dropped off and picked up the Children from supervised visits. (N.T. 4/28/2015, p.32). During the supervised visits, Ms. Lewis observed that the Children called the foster parent "Mother" and showed a lot of affection towards her. (N.T. 4/28/2015, p.33). Ms. Lewis stated that the Children seemed very comfortable and bonded with the foster parent who was meeting all of their emotional, academic and medical needs. (N.T. 4/28/2015, p.33). Additionally, Ms. Lewis testified that, at the conclusion of the supervised visits, the Children did not have any problems separating from their biological mother and appeared happy to return to the foster mother. (N.T. 4/28/2015, p.34). Based upon her observations, Ms. Lewis offered her opinion that there would be no irreparable harm to the Children should the parental Rights of Mother and Father be Terminated. (N.T.

5

4/28/2015, p.35). Ms. Lewis testified that Father had not seen the Children since they were six (6) months old and played no part in their life whatsoever. (N.T. 4/28/2015, p.36). Ms. Lewis went on to testify that the one child that had a single phone contact with Father did not provide evidence of a bond between Father and Child; while the other Child had no desire to speak with Father. (N.T. 4/28/2015, p.36). Because of this, Ms. Lewis testified that it would be in the best interests of the Children to have their Permanency Goal changed to Adoption. (N.T.4/28/2015, p.36).

Based upon the testimony presented, this Court granted DHS's Petition to Involuntarily Terminate Father's Parental Rights and Change the Children's Permanency Goal to Adoption.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In his Statement of Matters Complained of on Appeal, Father avers the following:

1. The trial court erred when it found that the Department of Human Services by clear and convincing evidence had met its burden to terminate Appellant's parental rights pursuant to 23 Pa.C.S.A.§2511(a)(1)(2)(5) and (8).

2. The trial court erred when it found that termination of Father's parental rights was in the best interests of the Children by finding that the Department of Human Services had met its burden pursuant to 23 Pa.C.S.A. §2511(b).

3. The trial court erred in changing the Children's permanency goals from reunification to Adoption.

## STANDARD OF REVIEW

When reviewing an appeal from a decree terminating parental rights, an Appellate Court is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient

evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, an appellate court must accord the hearing judge's decision the same deference that it would give to a jury verdict. In re: B.L.W., 2004 PA Super 30, 843 A.2d 380 (Pa. Super. 2004).

### A. The Trial Court Properly Found that the Department of Human Services Met Its Burden by Clear and Convincing Evidence To Terminate Father's Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5) and (8).

Termination of parental rights is governed by 23 Pa.C.S.A. §2511. In termination cases, the burden is upon DHS to prove by clear and convincing evidence that its asserted grounds for seeking termination of parental rights are valid. In re: C.T. and G.T.F., 2008 PA Super 31, 944 A.2d 779, 789 (Pa. Super. 2008). In the instant case, DHS's Petition asked the Court to terminate Father's parental rights under §2511(a)(1),(2), (5), and (8). In light of Father's failure over two years to meet his FSP objectives, his little effort to be involved in the lives of the Children while incarcerated, and his failure to maintain a relationship with the Children during the brief period of time that he was not incarcerated, the Trial Court properly granted DHS's Petition to Terminate.

### 1. The Trial Court properly granted the Petition pursuant to 23 Pa.C.S.A §2511(a)(1).

Section 2511(a)(1) provides that "parental rights may be terminated, if, for a period of at least six months, a parent *either* demonstrates a settled purpose of relinquishing parental claim to a child *or* fails to perform parental duties." In re: Adoption of R.J.S., 2006 PA Super 127, 901 A.2d 502, 510 n.5 (Pa. Super. 2006) (citing In the Matter of the Adoption of J.M.M., 2001 PA Super 244, 782 A.2d 1024, 1030 (Pa.Super. 2001)).

The Trial Court found clear and convincing evidence that Father demonstrated a settled purpose of relinquishing parental claim to the Children and failed to perform parental duties. Father testified that he last saw the Children when they were 6-7 months old, prior to being incarcerated in September 2009 for Failure to Register as a Megan's Law Offender. (N.T. 4/28/2015, p.19). Since that time Father had no contact with the Children. After his release from prison, Father's only contact with Children consisted of a phone call with one of the Children during one of Mother's supervised visits. Father failed to reach out to DHS until a couple of months before the Hearing of February 3, 2015.

Father's refusal to parent was also demonstrated by the fact that Father failed to comply with his FSP objectives or make any effort towards reunification with his Children. Father's FSP objectives were, to meet regularly with the agency social worker, locate and occupy suitable housing for the Children, maintain recovery for drug and alcohol abuse and maintain a relationship with the Children through regular visitation with the Children. These minimal objectives would have demonstrated Father's interest in caring for his Children. However, Father made little if any effort to fulfill these objectives.

Father was incarcerated during most of the lives of the Children. While incarceration alone is not sufficient to support termination under any subsection, "parental responsibilities are not tolled during incarceration." In re: D.J.S., 1999 PA Super 214, 737 A.2d 283, 286 (Pa. Super. 1999). Further, "[a] parent desiring to retain parental rights must exert himself to take and maintain a place of importance in his child's life." Adoption of Baby Boy A., 512 Pa 517, 517 A.2d 1244, 1246 (Pa. 1986).

8

With respect to failure to perform parental duties under subsection (a)(1), as well as incapability under subsection (a)(2), the Court must inquire whether the parent, while incarcerated, utilized those resources available while he or she was in prison to maintain a close relationship with the child. Id.

Father did not utilize any resource available to him to maintain a relationship with his Children. Father's refusal to comply with his minimal FSP objectives and to maintain a relationship with the Children demonstrated incapacity, abuse, neglect, or refusal which caused the Children to be without essential parental care. See In re: Adoption of W.J.R., 2008 PA Super 131, 952 A.2d 680, 682-683 (Pa. Super. 2008)(affirming trial court's decision to terminate parental rights of incarcerated father).

Consequently, this Court concluded that Father demonstrated a settled purpose of relinquishing parental claim to the Children and failed to perform his parental duties. For these reasons, the Trial Court found that DHS met its burden under 23 Pa.C.S.A. §2511(a)(1).

2.      **The Trial Court properly granted the Petition to Terminate Parental Rights pursuant to 23 Pa.C.S.A. § 2511(a)(2).**

Section 2511(a)(2) requires that "repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." 23 Pa.C.S.A. §2511(a)(2). These grounds are not limited to affirmative misconduct; "to the contrary those grounds may include acts of refusal as well as

9

incapacity to perform parental duties." In Re: Adoption of K.J., 2007 PA Super 337, 938 A.2d 1128, 1132 (Pa. Super. 2007).

The Supreme Court, in In re Geiger, 459 Pa. 636, 331 A.2d 172, 174 (1975), enunciated the fundamental test in termination of parental rights under what is now 2511(a)(2) as requiring the Petitioner to prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." See also In re: Adoption of K.J., 938 Pa. Super at 1133.

As discussed above, the Trial Court found that Father evidenced both an incapacity and refusal to parent. The Father's failure to maintain a relationship with the Children when the Children were in foster care demonstrates his incapacity and refusal to parent. In addition, there is no question that Father's failure to maintain contact with the Children demonstrated that Father left these young Children without parental care necessary for their physical or mental well-being.

Finally, the Court was not persuaded that Father could resolve his dependency issues in the near future. Father had not obtained suitable housing for the Children and was not receiving necessary drug and alcohol treatment. Further, Father never demonstrated that he was able to provide proper parental care for his Children. Consequently, Father showed a "repeated and continued incapacity and refusal" to parent the Children and the Father refused to remedy these deficiencies.

3.  **The Trial Court properly granted the Petition to Terminate Parental Rights Pursuant to 23 Pa.C.S.A. §2511(a)(5) and (a)(8).**

Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child. 23 Pa.C.S.A. §2511(a)(5).

The requirements to terminate pursuant to section 2511(a)(8) are similar. "[T]o terminate parental rights pursuant to 23 Pa.C.S.A. §2511(a)(8), the following factors must be demonstrated: (1) the child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." In re: Adoption of K.J., 938 Pa. Super. at 1133 (quoting In re Adoption of M.E.P., 2003 PA Super 210, 825 A.2d 1266, 1275-76 (Pa.Super. 2003)).

The Court found clear and convincing evidence to terminate Father's parental rights pursuant to Sections 2511(a)(5) and (a)(8) for the same reasons discussed above. In addition, the Court found it was in the Children's best interests to terminate Father's rights because the Children were residing in a pre-adoptive home since September 2014 and were bonded with their foster parent who was meeting all their needs.

11

**B. The Trial Court Properly Found that Termination of Father's Parental Rights was in the Children's Best Interests and that DHS Met Its Burden Pursuant to 23 Pa.C.S.A. §2511(b).**

After the Trial Court finds that the statutory grounds for termination have been satisfied, it must then determine whether the termination of parental rights serves the best interests of the child pursuant to 23 Pa.C.S.A. §2511(b). In the Matter of the Adoption of C.A.W. and A.A.W., 453 Pa. Super. 277, 683 A.2d 911, 917-18 (Pa. Super. 1996). In terminating the rights of a parent, the Court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. §2511(b). "Section 2511(b) centers judicial inquiry upon the welfare of the child rather than the fault of the parent." In re A.R., 2003 PA Super 456, 837 A.2d 560, 565 (Pa.Super. 2003). Further, "[o]ne major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child. In re: C.T. and G.T.F., 944 A.2d at 782 (citations omitted).

The Children were six (6) years old at the time of the Hearing, and had resided in a pre-adoptive home for approximately eight (8) months with a foster parent who was meeting all of their needs. The Children were bonded with their foster parent who they referred to as "Mother". The foster parent was providing a nurturing and loving home for the Children.

In contrast, the Children did not know Father, in fact one child was afraid to even speak to him over the phone. Consequently this Court concluded that there would be no detriment to the Children's best interests if Father's rights were terminated.

Since the Children had spent approximately (30) thirty months in foster care, Father had never cared for the Children, and the Children were in a nurturing and loving

Foster home, the developmental physical and emotional needs and welfare of the Children are best served by terminating Father's parental rights.

## CONCLUSION

This Court finds that DHS met its burden by clear and convincing evidence for terminating Father's parental rights pursuant to 23 Pa. C.S.A. §2511(a) and (b) and for the foregoing reasons, this Court respectfully requests that the Decree and Order of May 12, 2015, Terminating Father's Parental Rights pursuant to 23 Pa.C.S.A. §2511(a) and (b) and changing the Permanency Goal for both Children to Adoption be Affirmed.

BY THE COURT:

_____
ALLAN L. TERESHKO, Sr. J.

Aug 12, 2015
DATE

## CERTIFCATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing Opinion has been served upon the following parties by the manner as designated: **Family Court Delivery Mail Box .**

Carla A. Beggin, Esquire
Beggin & Greshes
1800 JFK Blvd. #300
Philadelphia, PA 19103
Counsel for Appellant Father

Fritz Karl Haverstick, Esq
Phila Solicitor's Office
One Parkway, 1515 Arch St, 16th flr.
Philadelphia, PA 19102
DHS Counsel

Adrianna Alfano, Esq.
Defenders Association
Child Advocacy Unit
1441 Sansom St
Philadelphia, PA
For children

Vince Furlong, Esq.
15041 Kelvin Ave.
Philadelphia, PA
Counsel for Mother

_____
ALLAN L. TERESHKO, Sr. J.

August 12, 2015
DATE